VERMONT SUPERIOR COURT

Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-01360



Erin Kehoe and Crystal Corriveau
      Plaintiffs

v.

Alex Beshay, Lisa Beshay, Chris Streker,
and the Town of Windham
      Defendants

<u>Decision on Defendants' Motion to Dismiss</u>

At a traditional town meeting, the moderator presides over the meeting, regulates the discussion, and conducts votes upon each warned article. 17 V.S.A. §§ 2658–2660. After the vote is taken, the moderator announces the outcome of the public question, and the consideration of the article is concluded.

After that, voters are permitted to make a motion for reconsideration. If the motion is made and seconded, the motion is then discussed and voted upon, and if the motion for reconsideration is approved by a majority of the voters, the assembly then takes up anew the article that was previously considered, as if the prior vote had not taken place. At a traditional Vermont town meeting, this procedure is only available for a limited period of time: the motion for reconsideration cannot be made "after the assembly has begun consideration of another article." 17 V.S.A. § 2661(a). An experienced town moderator, for this reason, typically pauses for a few beats after announcing the outcome of a vote on a main article in order "to allow adequate time for a motion for reconsideration to be made before taking up the next article." See Vermont Secretary of State, A Handbook for Vermont Moderators at 9 (2009) (copy in file).

Votes conducted by Australian ballot do not occur within the context of an assembled meeting, and so there is no opportunity for a voter to make a motion for reconsideration, nor for the assembly to debate and vote upon such a motion. Instead, there are two different mechanisms that serve the same purpose: either the town selectboard or the school board might decide to warn the article again and conduct a new vote on the same article, 17 V.S.A. § 2661(a), or at least five percent of the registered voters in the town may petition for reconsideration, 17 V.S.A. § 2661(b). Both of these methods result in a new vote on the same article as previously considered, as if the prior vote had not taken place. The new vote must use the exact same language as the original article. 17 V.S.A. § 2661(d)(1).

In other words, a petition for reconsideration that meets the criteria of § 2661(b) has the same parliamentary effect as a successful motion to reconsider made from the floor: it results in a new vote on the original public question.

When former Governor Jim Douglas was Vermont's Secretary of State, he wrote a treatise on Vermont town-meeting law with his then-deputy secretary Paul Gillies. They discussed this issue in their treatise, and explained that when a town receives a valid petition for reconsideration of a public question that was voted on by Australian ballot, the town should schedule a new vote upon the original question. As they put it, "[a] new vote on the article voted is automatic, without any need for a vote on the question of whether to reconsider or not." 1 Douglas & Gillies, A Book of Opinions at 476 (1992) (copy in file). The court finds this analysis to be persuasive.

In this case, on September 7, 2021, the voters of the town of Windham voted by Australian ballot upon the following question:

> Shall the Windham Elementary School be closed and all educational operations at that location be terminated at the end of the 2021-2022 school year and shall the voters authorize the Board of School Directors to provide for the education of the School District's PK-6 pupils by paying tuition in accordance with 16 V.S.A. § 21(a)(1)?

A majority of the voters answered this question in the affirmative. As a result, the article was approved, and the result of the public question was that the school should be closed. After that outcome was announced, a variety of townspeople began circulating a petition for reconsideration, and the petition garnered more than five percent of the registered voters. The petitioners then submitted their petition to the town, and a new vote was warned for November 2, 2021.

At the new vote on November 2, 2021, the article was worded exactly the same as the article on the original vote, as required by 17 V.S.A. § 2661(d)(1). The voters of the town of Windham voted by Australian ballot upon the following question:

> Shall the Windham Elementary School be closed and all educational operations at that location be terminated at the end of the 2021-2022 school year and shall the voters authorize the Board of School Directors to provide for the education of the School District's PK-6 pupils by paying tuition in accordance with 16 V.S.A. § 21(a)(1)?

This time, the outcome of the vote was that 139 votes were cast in favor of the article, and 142 votes were cast against the article. As a result, the article was not approved, and the result of the public question was that the school should not be closed.

Plaintiffs thereafter filed this election contest. Plaintiffs' fundamental allegation is that three voters participated in the election even though they were not then residents of the town. It has been assumed throughout the case that all three voters cast ballots against the article. However, it appears to the court that, even if these three votes were set aside, the result of the public question would be the same: there would be 139 votes cast in favor of the article, and 139 votes cast against the article. As a result, the article would not have received "a majority of the votes . . . in favor of the proposition," and so the article would not be approved, and the result of the public question would be the same: that the school should not be closed. See 17 V.S.A. § 2681a(e) (explaining that, for public questions conducted

by Australian ballot, "[n]o public question shall pass unless a majority of the votes, excluding blank and overvotes, is cast in favor of the proposition").

A court cannot grant relief in an election contest unless (1) there were errors committed in the conduct of the election "sufficient to change the ultimate result," (2) there was fraud in the electoral process "sufficient to change the ultimate result," or (3) for another reason, "the result of the election" was compromised. 17 V.S.A. § 2603(b)(1)–(3). If an election contest does not present an issue of sufficient magnitude to have "actually affected the election result," the election contest should be dismissed for failure to state a claim upon which relief can be granted. *Paige v. State*, 2024 VT 7, ¶ 11; *Luna v. City of Burlington*, No. 21-AP-201, 2022 WL 424880 (Vt. Feb. 2022) (unpub. mem.); *Putter v. Montpelier Pub. School System*, 166 Vt. 463, 467–69 (1997); *Jackson v. Town of Castleton*, No. 339-6-15 Rdcv, 2015 WL 13021692 (Vt. Super. Ct. Nov. 25, 2015) (Teachout, J.).

Here, for the reasons identified above, plaintiffs' election contest does not identify an issue "sufficient to change the ultimate result" or that "actually affected the election result." The result of the public question would have been the same regardless of whether the three challenged votes were set aside.

Defendants first raised this issue in a motion filed in December 2021. Over the months since then, there have been several court rulings on a variety of motions, but this issue has never been addressed nor decided by the court. It may be that confusion has persisted on the question of whether the November 2nd vote was a vote on a motion to reconsider or instead a "reconsideration vote"—a new vote on the original public question.* Plaintiffs have argued that the November 2nd vote was a vote on a motion to reconsider, such that a tie vote meant that the motion to reconsider failed, and that the result of the September 7th vote would stand. If that was a correct interpretation of the parliamentary procedure, plaintiffs would have stated a valid election contest upon which relief could be granted.

But, as explained above, plaintiffs' interpretation is not correct. It also does not reflect the language of the actual vote taken. The voters were not asked whether they wanted to reconsider the prior vote. The voters were instead asked—as required by § 2661(d)(1)—to vote on whether the Windham Elementary School should "be closed and all educational operations at the location be terminated at the end of the 2021-2022 school year." This was a vote on the original public question. The outcome was negative, regardless of whether the three challenged votes are included or excluded. 17 V.S.A. § 2681a(e). As such, plaintiffs' complaint does not identify an issue that "actually affected the election result" or upon which election-contest relief can be granted.

---

* The term "reconsideration vote" is confusing, because it uses the word "reconsideration." The term is used by Douglas and Gillies in their treatise, *supra*, at 475, and by Judge Teachout in *Jackson*, 2015 WL 13021692, and in 17 V.S.A. § 2661(e). It refers to the new vote on the original public question that follows either from a successful motion for reconsideration or from a successful petition for reconsideration. It does not mean that the new vote is the parliamentary equivalent of a vote on the motion to reconsider. Douglas and Gillies are clear that a "reconsideration vote" is a new vote on the original public question rather than "a vote on the question of whether to reconsider or not." 1 Douglas & Gillies, *supra*, at 476.

Plaintiffs have argued that it is wrong for the court to rely upon the work of Douglas and Gillies, because their treatise was published before amendments were made to the statutes in 1992. But the court has reviewed those amendments and does not find them to be relevant to either its analysis or the analysis of Douglas and Gillies. If anything, the amendments reaffirm that, once a successful petition for reconsideration has been filed with the town, the new vote should be conducted on the original public question, with the article stated "as lastly voted." 17 V.S.A. § 2661(d)(1). In other words, the amendment clarifies that the new article should be warned with the same language as the original public question. The only way to interpret this amendment is that the "reconsideration vote" is a new vote on the public question, rather than a vote upon whether to reconsider.

Plaintiffs have also argued that the November 2nd election was invalid because the warned article did not track the petition, citing *Concerned Voters of Londonderry v. Prouty*, 138 Vt. 442, 443 (1980). However, that case involved a petition for rescission (which is a different procedure, see 1 Douglas & Gillies, *supra*, at 477–78) which the town reworded and warned as though the petition had requested reconsideration. In that context, the recharacterization of the petition was determined to be erroneous. *Prouty*, 138 Vt. at 443. Here, the petition requested reconsideration, and the town warned a new vote accordingly. 17 V.S.A. § 2661(d)(1). As such, the court finds no error in the language of the warning.

As made clear by the court's January 24, 2023 summary-judgment decision, the remaining claims in this case derive from the authority of the court to grant "appropriate relief" in the context of a valid election contest under 17 V.S.A. § 2603. Because plaintiffs have not stated a valid claim upon which this relief can be granted, the remaining claims in the case are hereby dismissed, the remaining motions are denied as moot, and the case is closed.

Electronically signed on Monday, March 11, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 03/11/24
Windsor Unit